IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**Wheeling Division**

DIANA MEY, on behalf of herself and others similarly situated,

    Plaintiff,

v.

ADT, INC.,
SAFE STREETS USA, LLC, and
PERFECTVISION MANUFACTURING, INC.,

    Defendants.

ELECTRONICALLY FILED
Sep 25 2020
U.S. DISTRICT COURT
Northern District of WV

Civil Action No. 5:20-CV-209 (Bailey)

**COMPLAINT**

**Introduction**

1. Defendant ADT, Inc. is a publicly traded company that sells home-security hardware and home-monitoring subscriptions. To generate sales and subscribers, ADT relies on a network of third-party authorized dealers like Defendant Safe Streets, who in turn rely on telemarketing conducted by sales lead generators like Defendant PerfectVision Manufacturing, Inc.

2. Plaintiff Diana Mey is a Wheeling resident who received illegal ADT telemarketing calls from PerfectVision and Safe Streets, for which ADT is vicariously liable through a principal-agent relationship with those entities.

3. Accordingly, on behalf of persons and entities who also received ADT telemarketing calls at their homes or on their cellular telephones, Plaintiff brings this action as a class action under the Telephone Consumer Protection Act, which prohibits autodialed and

prerecorded telemarketing calls and calls to numbers on the National Do Not Call Registry without the recipient's express written consent. Plaintiff requests relief including an injunction to end these practices, and an award to class members of statutory damages for each illegal call.

## Parties

4. Plaintiff Diana Mey resides in Wheeling, West Virginia, in this District.

5. Defendant ADT, Inc. ("ADT") is a Delaware corporation with its headquarters in Boca Raton, Florida.

6. Defendant Safe Streets USA, LLC ("Safe Streets") is a Delaware corporation with its headquarters in Garner, North Carolina.

7. Defendant PerfectVision Manufacturing, Inc. ("PerfectVision") is an Arkansas corporation with its headquarters in Little Rock, Arkansas.

## Jurisdiction and Venue

8. This Court has federal question jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227 et seq.

9. This Court also has jurisdiction under 28 U.S.C. § 1332(d) (Class Action Fairness Act) because, given the magnitude of the classes involved here, the amount in controversy exceeds $5,000,000 and Plaintiff is diverse from at least one Defendant.

10. This court has personal jurisdiction over Defendants because they operate, conduct, engage in, and/or carry on business activities in this District and a substantial part of the wrongful acts alleged in this Complaint were committed in West Virginia.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim—namely, the calls to Plaintiff—occurred in this District.

## The TCPA

12. In 1991, Congress enacted the TCPA in response to increased consumer complaints regarding nuisance telemarketing practices.

13. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1).

14. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purpose[.]" 47 U.S.C. § 227(b)(1)(B).

15. Calls made by an automatic telephone dialing system ("ATDS") or with a prerecorded or artificial voice are referred to as "robocalls" by the Federal Communications Commission ("FCC") and herein. *See Stop Unwanted Robocalls and Texts*, FCC, https://www.fcc.gov/consumers/guides/stop-unwanted-robocalls-and-texts (last visited September 23, 2020).

16. The TCPA makes it unlawful for any entity to make more than one call in a 12-month period to any number that is registered with the National Do Not Call Registry or registered on the entity's company specific do-not-call list. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2), (d).

17. The TCPA provides a private cause of action to persons who receive calls in violation of each of these provisions. 47 U.S.C. §§ 227(b)(3), (c).

18. Any seller of goods or services can be liable for violating the TCPA even if it does not directly place or initiate the calls.

19. Indeed, the FCC has consistently held that entities that "may be held liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd. 6574, 6574 (¶ 1) (2013).

20. Without vicarious liability, an entity could "avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties [that] would leave consumers in many cases without an effective remedy for telemarketing intrusions." *Id.*

## Factual Allegations

**A. ADT is vicariously liable for the illegal calls to Ms. Mey and the Classes.**

21. ADT manufactures and provides, through authorized dealers, home security systems for residential and commercial use, including within this District.

22. Safe Streets is an ADT authorized dealer that sells and installs ADT security systems.

23. Safe Streets enters customers into long-term contracts with ADT.

24. ADT pays Safe Streets for every sale and installation that Safe Street generates.

25. PerfectVision generates sales leads for Safe Streets and earns commissions for each lead generated.

26. ADT is the ultimate controller and beneficiary of this operation. It has contractual rights to dictate how Safe Streets makes sales and trains its personnel, and it has the contractual

authority to discipline or terminate Safe Streets if it learns that Safe Streets or its sub-vendors are telemarketing illegally.

27. ADT established, approved, or ratified Safe Streets and PerfectVision's policies and practices.

28. To help Safe Streets and PerfectVision generate more sales on its behalf, ADT provides Safe Streets and PerfectVision with ADT's proprietary customer-service databases and pricing information.

29. ADT authorizes Safe Streets and PerfectVision to use ADT's trade name, trademark, and to hold themselves out as ADT while both rely on ADT's widespread brand name recognition and nationwide marketing to generate leads and sales of ADT services and products.

30. ADT requires PerfectVision to only use marketing and advertising resources and tactics approved by ADT. *Marketing & Advertising Guidelines - 2020*, PERFECTVISION, https://www.perfect-vision.com/DealerResources/TechnicalDocumentWindow.aspx?docID=1435&docTitle=ADTSafestreetsMarketingGuidelines2020&groupCode=SAFE.

31. When prospective customers call ADT, they are often transferred to a Safe Streets sales representative who states that they are from ADT. *Safe Streets USA - ADT Authorized Dealer*, YELP, https://www.yelp.com/biz/safe-streets-usa-adt-authorized-dealer-riverside?start=20 (last visited September 23, 2020).

32. People speaking to Safe Streets are made to believe they are speaking to ADT directly. *Id*.

33. Safe Streets technicians wear ADT badges at installation appointments. *Id*.

34. Publicly available information confirms that Perfect Vision holds itself out publicly as a "partner" of both ADT and Safe Streets. *See Safe Streets Referral Program*, PERFECTVISION, https://www.perfect-vision.com/Partner/ADTSafeStreets (last visited Sept. 23, 2020).

35. Given ADT's significant authority over Safe Streets' operation, ADT knew or should have known how Safe Streets was generating sales on ADT's behalf.

36. ADT has long been on notice that Safe Streets obtains sales leads for ADT via illegal telemarketing.

37. At least three class-action complaints have been filed against ADT for illegal telemarketing by Safe Streets or its sub-vendors.

38. ADT and Safe Streets are defendants in the United States District Court for the Southern District of Florida. The class-action complaint alleges that Safe Streets or a third-party on behalf of Safe Streets used an ATDS and prerecorded message in violation of the TCPA. *See* Complaint at 5–9, *Fitzhenry v. ADT LLC, et al.*, No. 9:19-cv-80626 (S.D. Fla. May 10, 2019).

39. ADT, Safe Streets, and a third-party lead generator are defendants in the United States District Court for Northern District of Illinois. The class-action complaint alleges that the third-party lead generator sent text messages on behalf of ADT and/or Safe Streets in violation of the TCPA. *See* Complaint at 4–10, *Brand v. ADT, LLC, et al.*, No. 1:19-cv-07281 (N.D. Ill. November 11, 2019).

40. Safe Streets and third-party affiliates are defendants in the United States District Court for the Eastern District of North Carolina. The class-action complaint alleges that the third-party lead generator sent text messages in violation of the TCPA. *See* Complaint at 3–13, *Davis v. Safe Streets USA LLC, et al.*, No. 5:19-cv-00455-BR (E.D.N.C. May 20, 2019).

41. ADT either knew about Safe Streets' use of illegal telemarketing and did nothing, or willfully turned a blind eye in the face of mounting consumer complaints.

42. Here, Safe Streets relied on PerfectVision to generate and direct sales leads to Safe Streets.

43. Safe Streets sales representatives received calls dialed using PerfectVision's ATDS.

44. Safe Streets knew or should have known that sales leads were being funneled to it through an illegal ATDS operated by PerfectVision.

45. Given ADT's significant involvement in Safe Streets' operation, ADT knew or should have known Safe Streets was relying on illegal telemarketing by PerfectVision.

46. ADT is vicariously liable for the TCPA violations alleged herein under common law agency principles.

47. ADT accepted the benefits of Safe Streets and PerfectVision's illegal telemarketing campaigns by receiving fees from new consumer accounts, despite knowledge that new customer accounts were generated through illegal telemarketing calls.

48. ADT cloaked Safe Streets and PerfectVision with apparent/implied authority to act on its behalf by authorizing Safe Streets and PerfectVision to make marketing calls on its behalf, by authorizing Safe Streets and PerfectVision to advertise that they are affiliated with the ADT, and by authorizing Safe Streets and PerfectVision to contractual bind ADT directly with consumers.

49. ADT had the authority and responsibility to prevent or correct the unlawful telemarketing practices of Safe Streets and PerfectVision and formulated, directed, controlled,

and participated in the acts and practices of the violated the TCPA, including the acts and practices set forth in this complaint.

50. Under ordinary principles of vicarious liability, ADT is liable for the TCPA violations alleged above because it is directly involved in, authorized, or ratified the Safe Streets and/or PerfectVision operations that violated the TCPA.

**B. Factual Allegations Regarding Plaintiff.**

*The August 31, 2019 Call*

51. Plaintiff owns a cellular telephone and cellular service with the number 304-281-XXXX.

52. Plaintiff's number is listed on the National Do Not Call Registry.

53. On August 31, 2019, an ADT telemarketing call was placed to this number.

54. Plaintiff's voice mail picked up the call. After it did so, there was a distinctive pause consistent with the use of an ATDS.

55. After the pause, a representative named "David" came on the line calling from ADT Home Security.

56. On information and belief, this call was made by a third-party lead generator authorized by either Safe Streets or PerfectVision, or both, to make illegal telemarketing calls on ADT's behalf.

*The September 4, 2019 Call*

57. On September 4, 2019, Plaintiff received a second telemarketing call on her number 304-281-XXXX.

58. Again, Plaintiff's voice mail answered, and again there was a distinctive pause consistent with the use of an ATDS.

59. After the pause, a representative named "David" came on the line calling from ADT Home Security.

*The September 8, 2020 Call*

60. On September 8, 2020, Plaintiff received a third telemarketing call on number 304-281-XXXX.

61. Plaintiff answered this call in-person.

62. After she answered, there was a distinctive pause followed by an audible "bloop" sound.

63. After the "bloop" sound, an ADT representative came on the line.

64. The pause and "bloop" sound, followed by a person speaking, are consistent with an ATDS.

65. The ADT representative was named "Renee," and stated that she was calling from "ADT Security."

66. "Renee" informed Plaintiff that Plaintiff was "completely qualified" to get a home security system and asked Plaintiff several questions.

67. Plaintiff sought to identify the entity that placed the call.

68. Relying on previous experience with telemarketing calls, Plaintiff understood that the telemarketer would disconnect if she did not seem interested.

69. To protect her identity, Plaintiff told "Renee" that her name was Marilyn Willey and provided fictitious mailing and e-mail addresses.

70. After asking Plaintiff several questions, "Renee" transferred Plaintiff to a representative named "Mark," who stated he worked for "Safe Streets with ADT Home Security."

71. "Mark" stated that Safe Streets and ADT "partnered" to offer the "ADT door-bell camera" for a monthly subscription cost and an activation fee.

72. After Plaintiff seemed interested, "Mark" identified himself as "Mark Glazer" and provided a return phone number of 866-595-1607, extension 0006.

73. Publicly available information identifies this number as a contact number for Safe Streets and the website www.safestreets.com.

74. After Plaintiff identified the caller as Safe Streets, she asked "Mark" how Safe Streets obtained her contact information.

75. "Mark" told her that she was initially called by PerfectVision.

*The September 15, 2020 Call*

76. Plaintiff also owns a cellular telephone and cellular service with the number 304-242-XXXX.

77. This number is also listed on the National Do Not Call Registry.

78. On September 15, 2020, Plaintiff received a telemarketing call on this number.

79. Plaintiff answered this call in-person.

80. After she answered, there was a distinctive pause followed by an audible "bloop" sound.

81. After the "bloop" sound, an ADT representative came on the line.

82. The pause and "bloop" sound, followed by a person speaking, are consistent with an ATDS.

83. The ADT representative was named "Michael," and stated that he was with "ADT Security."

84. "Michael" informed Plaintiff that "ADT is the number one security company in the world for over 100 years and we pride ourselves on our monitoring."

85. Plaintiff sought to identify the entity that placed the call.

86. To protect her identity, Plaintiff told "Michael" that her name was Roberta Carter and provided an e-mail of Lincolnwva@gmail.com.

87. While Plaintiff was still on the call with "Michael" she received an e-mail at Lincolnwva@gmail.com from both Safe Streets and ADT.

88. Plaintiff informed "Michael" she had received the e-mail, and "Michael" responded, "That's us."

89. Having identified Safe Streets and ADT as the entities responsible for the September 15, 2020, telemarketing call, Plaintiff told "Michael" that she was not interested in ADT's services, that her number was on the Do Not Call Registry, and she demanded that she not be called again.

*The September 16, 2020 Call*

90. On September 16, 2020, Ms. Mey received yet another telemarketing call from "Allie" with ADT on her number 304-281-XXXX.

91. Plaintiff's voice mail picked up the call. After it did so, again there was a distinctive pause consistent with the use of an ATDS.

92. After a full seven seconds of silence, Plaintiff's voice mail said "hello." After this, again there was an audible "bloop" sound consistent with an ATDS.

93. After the "hello," the ADT sales representative introduced herself as "Allie," but the call disconnected after Plaintiff's voice mail did not respond.

**Class Action Allegations**

94. Under Federal Rules of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this class action on behalf of Classes as defined as follows:

Cell Phone Class:

All persons within the United States to whom: (a) ADT or a third party acting on ADT's behalf, made one or more non-emergency telephone calls; (b) promoting ADT's goods or services; (c) to their cellular telephone numbers; (d) through the use of an automatic telephone dialing system; and (e) at any time in the period that begins four years before the date of filing this Complaint to trial.

National Do-Not-Call Registry Class:

All persons within the United States who: (a) Received more than one call, made by ADT or on ADT's behalf; (b) promoting ADT's goods or services; (c) in a 12-month period; (d) on their personal cellular telephone line or residential telephone line; (e) whose personal cellular or residential telephone line number(s) appears on the National Do-Not-Call Registry; and (f) at any time in the period that begins four years before the date of filing this Complaint to trial.

95. Excluded from classes are Defendants; the Defendants' agents and employees; any entities in which the Defendants have a controlling interest or that has a controlling interest in Defendants; Defendants' legal representatives, assignees, and successors; any Judge to whom this action is assigned; and any member of the Judge's staff and immediate family.

96. <u>Numerosity.</u> The Classes are so numerous that joinder of all members is impracticable. Given the nature of the telemarketing tactics and practices at issue, and given the history of ADT and Safe Streets as to extensive violations of the TCPA, the number of class members is expected to be large and involve potentially hundreds of thousands of consumers. The disposition of the claims of the Classes in a single action will provide substantial benefits to all parties and the Court.

97. <u>Commonality.</u> There are numerous questions of law and fact common to Plaintiff and Members of the Classes. These common questions of law and fact include, but are not limited to, the following:

    a. As to Plaintiff and the Cell Phone Class, whether the Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf

12

      violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS and/or artificial or prerecorded voice;

b. As to Plaintiff and the Cell Phone Class, whether the Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willingly violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS or artificial or prerecorded voice, thus entitling Plaintiff and the Cell Phone Class to treble damages;

c. As to Plaintiff and the National Do-Not-Call Registry Class, whether the Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf violated 47 C.F.R § 64.1200(c) by initiating more than one telephone solicitation within a 12-month period to Plaintiff and Members of the National Do-Not-Call Registry Class who have registered their residential telephone numbers with the National Do-Not-Call Registry.

d. As to Plaintiff and the National Do-Not-Call Registry Class, whether the Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf knowingly and/or willfully violated 47 C.F.R § 64.1200(c) by initiating more than one telephone solicitation within a 12-month period to Plaintiff and Members of the National Do-Not-Call Registry Class who have registered their residential telephone numbers with the National Do-Not-Call Registry.

  e. Whether Defendants are vicariously viable for ATDS generated calls promoting Defendants' products and/or services made by Defendants' affiliates, agents, and/or other persons or entities acting on Defendants' behalf;

  f. Whether Defendants are liable for telephone calls to persons on the National Do-Not-Call Registry made by Defendants' affiliates, agents, and/or other persons or entities acting on Defendants' behalf.

98. <u>Typicality.</u> Plaintiff's claims are typical of the claims of the Classes. Plaintiff's claims, like claims of the Classes, arise out of the same common course of conduct by the Defendants and are based on the same legal and remedial theories.

99. <u>Adequacy.</u> Plaintiff will fairly and adequately protect the interests of the Classes. Plaintiff has retained competent and capable attorneys with significant experience in complex and class-action litigation, including consumer class actions and TCPA class actions. Plaintiff and her counsel are committed to prosecuting this action vigorously on behalf of the Classes and have financial resources to do so. Neither Plaintiff nor their counsel have interests that are contrary to or that conflict with those of the proposed Classes.

100. <u>Predominance.</u> Defendants have engaged in a common course of conduct toward Plaintiff and Members of the Classes. The common issues arising from this conduct that affect Plaintiff and Members of the Classes predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

101. <u>Superiority.</u> A class action is the superior method for the fair and efficient adjudication of this controversy. Classwide relief is essential to compel Defendants to comply with the TCPA. The interest of individual class members in individually controlling the

prosecution of separate claims against Defendants is small because damages for TCPA violations in an individual action are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class-action claims because the calls at issue are all automated. Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action.

102. The proposed class members are identifiable through phone records and phone number databases that will be obtained through discovery.

103. Plaintiff is a Member of each Class.

104. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

### FIRST CLAIM FOR RELIEF
### (Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A) – Cellular Telephone Calls – Cell Phone Class)

105. Plaintiff realleges and incorporates by reference each allegation set forth in the preceding paragraphs.

106. The foregoing acts or omissions of the Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone number of Plaintiff and Members of the Cell Phone Class using an ATDS and/or artificial or prerecorded voice.

107. As a result of Defendants and/or their affiliates, agents, and/or persons or entities acting on Defendants' behalf violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), Plaintiff and

Members of the Cell Phone Class are entitled to an award of (a) $500 in damages for each and every call to their cellular phone numbers using an ATDS and/or artificial or prerecorded voice in violation of 47 U.S.C. § 227(b)(3)(B), or (b) $1,500 for each knowing or willful violation.

108. Plaintiff and Members of the Cell Phone Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on defendants behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone using ATDS and/or artificial or prerecorded voice in the future.

**SECOND CLAIM FOR RELIEF**
**(Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)(5) – National Do-Not-Call Registry – National Do-Not-Call Class)**

109. Plaintiff realleges and incorporates by reference each allegation set forth in the preceding paragraphs.

110. The foregoing acts or omissions of the Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants behalf constitute numerous and multiple violations of the TCPA, 47 C.F.R. § 64.1200(c), by initiating more than one telephone solicitation within a 12-month period to Plaintiff and Members of the National Do-Not-Call Class who have registered their telephone numbers with the National Do-Not-Call Registry.

111. As a result of Defendants and/or their affiliates, agents, and/or persons or entities acting on Defendants' behalf violations of the TCPA, 47 C.F.R. § 64.1200(c), Plaintiff and Members of the National Do-Not-Call Class are entitled to an award of (a) $500 in damages for each and every call initiated to them, after registering their telephone number(s) with the

National Do-Not-Call Registry, pursuant to 47 U.S.C. § 227(c)(5)(B), or (b) $1,500 for each knowing or willful violation.

112.   Plaintiff and Members of the National Do-Not-Call Class Registry are also entitled to and do seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants behalf from violating 47 C.F.R. § 64.1200(c) by initiating more than one telephone solicitation to any telephone subscriber who has registered his or her telephone number(s) with the National Do-Not-Call Registry in the future, pursuant to 47 U.S.C. § 227(c)(5)(A).

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of the Members of the Classes, request judgment against Defendants as follows:

A.   That the Court certify the proposed Classes;

B.   That the Court appoint Plaintiff as Class Representative of the Classes;

C.   That the Court appoint the undersigned counsel as counsel for the Class;

D.   That the Court enter a judgment permanently enjoining the Defendants from engaging in or relying upon telemarketing, or, alternatively, from engaging in or relying upon telemarketing that violates the TCPA;

E.   That, should the Court permit Defendants to engage in or rely on telemarketing, it enter a judgment requiring them to adopt measures to ensure TCPA compliance, and that the Court retain jurisdiction for a period of six months to ensure that the Defendants comply with those measures;

F.   That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendants' compliance with the TCPA;

      G.    That the Court enter a judgment finding the Defendants are vicariously liable to Plaintiff and all Class Members for violations arising from the calls;

      H.    That the Court enter a judgment finding that Defendants are jointly and severally liable to Plaintiff and all Class Members for all violations arising from the calls;

      I.    That Defendants and their agents, or anyone acting on their behalves, be immediately restrained from altering, deleting, or destroying any documents or records that could be used to identify Class Members;

      J.    That the Plaintiff and all Class Members be awarded statutory damages of $500 for each negligent violation of the TCPA, and $1,500 for each knowing or willful violation;

      K.    That the Court enter an order awarding the Plaintiff reasonable attorneys' fees and costs; and

      L.    That the Plaintiff and all Class Members be granted other relief that is just and equitable under the circumstances.

## DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

                                                                           Plaintiff,
                                                                          By Counsel,

 /s/ John W. Barrett
John W. Barrett (WV Bar No. 7289)
Jonathan R. Marshall (WV Bar No. 10580)
Sharon F. Iskra (WV Bar No. 6582)
BAILEY & GLASSER LLP
209 Capitol Street
Charleston, WV 25301
Telephone: (304) 345-6555
jbarrett@baileyglasser.com
jmarshall@baileyglasser.com
siskra@baileyglasser.com

Edward A. Broderick
BRODERICK LAW, P.C.
99 High St., Suite 304
Boston, MA 02110
Telephone: (617) 738-7080
ted@broderick-law.com

Matthew P. McCue
The Law Office of Matthew P. McCue
1 South Avenue, Suite 3
Natick, MA  01760
Telephone: (508) 655-1415
mmccue@massattorneys.net

*Counsel for Plaintiff*